## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

JOHN E. TROTTER,

        Plaintiff,

    v.

WARDEN KOLAWOLE AKINBAYO, *et al.*,

        Defendants.

C.A. No 20-0336-MPT

## MEMORANDUM ORDER

Plaintiff John E. Trotter ("Plaintiff"), an inmate at Howard R. Young Correctional Institution in Wilmington, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] Plaintiff appears *pro* se and proceeds *in forma pauperis*.[2]  Presently before the court is a motion for judgment on the pleadings[3] filed by the State Defendants Kolawole Akinbayo, Jennifer Barnes, and Heidi Holliway ("Defendants").

## I.    NATURE AND STAGE OF PROCEEDINGS

This matter was previously assigned to Judge Stark, who screened the Complaint under 28 U.S.C. § 1915A, denied Plaintiff's motion for a preliminary injunction,[4] and ruled on Defendants' motion to dismiss.[5]  Plaintiff alleges that Defendants in their individual capacities violated his Fifth, Eighth, and Fourteenth Amendment rights when they classified him as a sex offender and required him to participate in a prison-based sexual offender treatment program.[6]  Upon Judge Stark's elevation to the United States Court of Appeals for the Federal Circuit, the parties

---

[1] D.I. 4.

[2] D.I. 6.

[3] D.I. 24.

[4] D.I. 11.

[5] D.I. 18; D.I. 19.

[6] D.I. 4 at 5.

consented to the jurisdiction of this judge.[7]  In addition to this motion, also pending is Plaintiff's motion to appoint counsel.[8]

## II.    STATEMENT OF FACTS

1.      Plaintiff was convicted of unlawful sexual contact in the third degree[9] on April 24, 1997.[10]

2.      At the time, Delaware had recently instituted a registration requirement for individuals convicted of sexual crimes, for which registration of individuals convicted of this offence was at the discretion of the court.  Specifically, section 4120 of title 11 of the Delaware Code stated:

> A registrant may petition the court which subjected the registrant to the provisions of this subchapter for release from registration obligations.  The court may grant such a petition for release from registration only upon a showing that the registrant (i) has not committed any act which could result in a conviction of (1) any of the offenses specified in §§ 764 through 779 of this title, or (2) any of the offenses specified in §§ 1108 through 1111 of this title, or (3) attempt to commit any of the foregoing offenses, within 15 years following the registrant's last conviction or release from incarceration, whichever is later; provided, **however, that if the offense of which the prisoner was convicted was a misdemeanor and the court determines at sentencing** or upon petition brought at any time after sentencing **that the person is not likely to pose a threat to the safety of others** if released from the registration obligations and/or the provisions of § 4336 of this title, **the court may release the person from such obligations**, and (ii) that the person is not likely to pose a threat to the safety of others if released from registration obligations.[11]

---

[7] D.I. 25.

[8] D.I. 17.

[9] 11 Del. C. § 767.

[10] D.I. 24-1, Ex. A at Page 2 of 12–Page 4 of 12.

[11] Del. Code Ann. tit. 11, § 4120(a) (1996) (emphasis added); *see also* 70 Del. Laws, c. 397, §§   1-19, 23[24], 24[25], 25[26], 23[27] (1996) (approved on June 27, 1996).

At the time, unlawful sexual conduct in the third degree was a class A misdemeanor.[12] Judge Babiarz sentenced Plaintiff to 1 year at Supervision Level 5, suspended for 1 year at Supervision Level 3.[13]  On the docket, Judge Babiarz noted "Del.C.4120 registration not required- defendant not likely to pose threat to safety of others."[14]

3.      On March 25, 1998, Plaintiff was sentenced for violation of parole, his probation was revoked and his Level 5 sentence was reimposed.[15]

4.      On July 13, 1998, the Delaware legislature overhauled section 4120 to make registration mandatory for a range of sex offenders.[16]  The new version of the statute became effective on March 1, 1999.[17]  It added sections 4121 and 4122 to the code.[18]

5.      Section 4121 assigns sex offenders to one of three "Risk Assessment Tiers":  Tier I, Tier II, and Tier III.[19]

6.      Plaintiff's conviction would place him in the lowest category, Tier I.[20]

7.      Section 4122 states that "Section 4121 of this title shall be applicable to any person convicted after June 21, 1996, but before March 1, 1999."[21]  Plaintiff was convicted on April 24, 1997.  Therefore section 4121 applies to him.  Moreover, since Plaintiff had not been assigned a Risk Assessment Tier at sentencing, section 4122

---

The court notes that Defendants' brief cites to the current versions of the statutes and fails to address the prior versions.

[12] *Id.* §  767 (1996).

[13] D.I. 24-1, Ex. A at Page 3 of 12–Page 4 of 12.

[14] *Id.* at Page 4 of 12.

[15] *Id.* at Page 10 of 12.

[16] Del. Code Ann. tit. 11, § 4120 (1999).

[17] 71 Del. Laws, c. 429 (1998).

[18] *Id.*

[19] Del. Code Ann. tit. 11, § 4121(b)–(e) (1999).

[20] *Id.* at (e)(3) (1999).

[21] Del. Code Ann. tit. 11, § 4122(a) (1999)

provides: "as soon after March 1, 1999, as is practicable, the Attorney General shall apply § 4121 of this title to those persons identified by subsection (a) of this section, and will redesignate those persons to a Risk Assessment Tier pursuant to § 4121 of this title."[22]   In addition, section 4122 requires notice to the effected individuals and an appeal process.[23]

8.      According to the updated version of section 4120, "[a]ny sex offender required to register pursuant to this section may petition the Superior Court for release from the registration requirements as set forth in § 4121(f)(2) of this title."[24]

9.      Section 4121, subsection (f)(2) articulated the standard by which the court may release offenders from registration.  Specifically:

> c. Any sex offender designated to Risk Assessment Tier I may petition the Superior Court for relief from designation as a sex offender, and from all obligations imposed pursuant to this section and § 4120 of this title, if 10 years have elapsed from the last day of any Level IV or V sentence imposed at the time of the original conviction, or from the date of sentencing if no Level IV or V sentence was imposed, and if the offender has not been convicted of any crime (other than a motor vehicle offense) during such time.  If the offender has been convicted of any subsequent offense (other than a motor vehicle offense) or has been otherwise found to have violated the terms of any probation, parole or conditional release relating to the sentence originally imposed following the conviction for the underlying sex offense, no petition or redesignation shall be permitted until 10 years have elapsed from the date of the subsequent conviction or finding of violation, during which time no additional convictions or findings of violation can have occurred.

> d. The Superior Court shall not grant a petition for redesignation or relief filed pursuant to this subsection unless:

---

[22] *Id.* at (b) (1999).

[23] *Id.*

[24] Del. Code Ann. tit. 11, § 4120(h) (1999).

> 1. The sex offender establishes, by a preponderance of the evidence, that the public safety no longer requires preservation of the original designation; and
>
> 2. The Court provides the Attorney General with notice of the petition and with a reasonable period of time to be heard upon the matter.[25]

Thus, in the best-case scenario, offenders designated at Risk Assessment Tier 1 are released from the registration requirements 10 years after completion of their Level IV or Level V sentence.

10.     On July 19, 1999, the State of Delaware proposed an addendum to Plaintiff's sentence outlining a "Sex Offender Special Conditions of Supervision."[26]  This addendum added a list of conditions to Plaintiff's release, including participation in "a sex offender relapse prevention education group at the day reporting center" and registration under section 4120.[27]  Judge Barron signed this recommendation for Judge Gebelein on July 30, 1999.[28]  The docket does not reflect a hearing or any participation by Plaintiff or his counsel.[29]

11.     On February 10, 2000, Judge Gebelein dismissed as unimproved Plaintiff's sentence in the unlawful sexual contact matter.[30]

12.     Three and a half years later, on September 4, 2003, the Delaware Department of Justice moved to designate Plaintiff as a Tier I sex offender.[31]  Plaintiff opposed the motion.[32]

---

[25] Del. Code Ann. tit. 11, § 4121(f)(2) (1999).  This provision is presently found at section (e)(2) of the statute.  11 Del. C. § 4121(e)(2)(c)–(d).

[26] D.I. 24-1, Ex. A at Page 10 of 12–Page 11 of 12.

[27] *Id*.

[28] *Id*. at Page 11 of 12.

[29] *Id*.

[30] *Id*.

[31] *Id*.

[32] *Id*.

13.     On May 7, 2004, Deputy Attorney General James Apostolico filed a letter

to Judge Babiarz on the docket.  The letter stated:

> Dear Judge Babiarz:
>
> Please accept this letter as the State's request to withdraw
> its Motion to Designate the Defendant as a Tier I Sex
> Offender, which was previously filed on September 4, 2003.
> This request is based upon a thorough review of the history
> of this case as well as a review of 11 *Del. C.* §4120 as the
> law existed at the time of the defendant's conviction on April
> 24, 1997.  Since the original plea agreement did not include
> an agreement to register as a sex offender and Your Honor
> determined that the defendant was not likely to pose a threat
> to the safety of others if released from the registration
> obligations, it appears that the defendant is exempt from the
> requirements of 11 *Del. C.* §4120 for purposes of this case.
> The Court's decision was consistent with a former provision
> of 11 *Del. C.* §4120 which, at the time of the conviction;
> provided "that if the offense was a misdemeanor and the
> Court determines at sentencing . . . that the person is not
> likely to pose a threat to the safety of others if released from
> the registration obligations and/or the provisions of §4336 of
> this title, the Court may release the person from such
> obligations."
>
> Therefore, for these reasons and the fact that the defendant
> has been discharged from probation, the State withdraws its
> request to have the defendant comply with the registration
> provisions of 11 *Del. C.* §4120.[33]

Accordingly, the docket reflects that the motion was withdrawn.[34]

14.     On July 5, 2007, the legislature passed 11 Del. C. § 4120A, which created

the Sex Offender Management Board.[35]  Section 4120A also includes the following

provisions:

> (e) Each sex offender sentenced by a court for an offense
> committed on or after January 1, 2010, shall be required, as
> a part of any sentence to probation, community corrections,

---

[33] D.I. 16-1, Ex. CE.

[34] D.I. 24-1, Ex. A at Page 12 of 12.

[35] 76 Del. Laws, c. 88.

or incarceration with the Department of Correction, to undergo treatment to the extent appropriate to such offender based upon the recommendations of the evaluation and identification.

(f) Each sex offender placed on parole by the State Board of Parole on or after January 1, 2010, shall be required, as a condition of such parole, to undergo treatment based upon the recommendations of the evaluation and identification regarding such offender during the offender's incarceration or any period of parole.[36]

This new statute requires any sex offender sentenced or placed on parole after January 1, 2010 to undergo "treatment" as defined by the Sex Offender Management Board.

15.    Based upon the record presently before the court, on February 11, 2010, ten years had passed since Judge Gebelein discharged as unimproved Plaintiff's sentence in the unlawful sexual contact matter.  An individual sentenced on such a charge and categorized in Tier I, would have a basis under section 4121(f)(2) to request his removal from the sexual offender registry at that time.[37]

16.    At some point in early 2011, despite having taken the position in 2005 that Plaintiff was not required to register under section 4120,[38] the Delaware Department of Justice prosecuted Plaintiff for violation of parole based upon Plaintiff's failure to register as a sex offender under section 4120.[39]  After a bench trial, he was sentenced by Judge Streett on April 11, 2011 to a 21 month sentence at Level 5, suspended in favor of 18

---

[36] 11 Del. C. § 4120A(e)–(f).

[37] Del. Code Ann. tit. 11, § 4121(f)(2)(c) (1999).

[38] D.I. 16-1, Ex. CE.

[39] D.I. 16-1, Ex. CC.  The only information about this prosecution and sentencing identifies the original charge as "FAIL TO RE REG(F)."  *Id*.  The court notes that no aspect of this prosecution for violation of parole appears on the docket related to the original 1997 unlawful sexual contact misdemeanor conviction.  Defendants did not address these facts and instead jumped more than a decade, from 2004 to 2016, in their jumbled statement of "background and procedural history."  D.I. 22 at ¶¶ 13–14.

days at the VOP Center, followed by Level 4 home confinement and additional confinement terms.[40]

17.    In August 2012, Plaintiff contacted Judge Brady to request a modification of sentence to be removed from the sex offender registry.  On August 23 of that year, Judge Brady wrote a letter to Plaintiff, noting the 2004 letter from DAG Apostolico and stating "In sum, you are not required to register, and are not on the registry."[41]  On August 28, Deputy AG Martin O'Connor wrote a letter to Judge Brady acknowledging that Plaintiff "has in fact been registered [under section 4120] and was given a tier designation earlier this year."[42]  DAG O'Connor stated further that "given the court's correspondence, Mr. Aposolico's letter, and the length of time that has passed since his misde[]meanor conviction, I have asked SBI to remove Mr. Trotter from the registry.  SBI informed me that they removed Mr. Trotter from the register, and notified him by phone today."[43]

18.    In 2016, Plaintiff was convicted of assault in the second degree, drug dealing tier 4, and possession of a destructive weapon.[44]  He was sentenced to 8 years of confinement at Level 5 and began his sentence on August 17, 2016.[45]

---

[40] D.I. 16-1, Ex. CC; *see also* D.I. 16 at ¶¶ 11–12.  It is unclear why this sentence did not appear on the original criminal docket for the underlying crime that sparked the alleged parole violation in the first place.  Neither the State nor Plaintiff have provided a copy of that separate Superior Court criminal docket.

[41] D.I. 24-1, Ex. A at Page 12 of 12.

[42] *Id*.

[43] *Id*.

[44] D.I. 8, Ex. K.

[45] *Id*.

19.     A March 20, 2018 "Offender Status Sheet" created by the Delaware Department of Correction ("DOC") outlines Plaintiff's sentence.[46]  This document contains a field for "Sex Offender"—as it pertains to Plaintiff, the box is not checked.[47]

20.     In 2019, the DOC notified Plaintiff that he had been classified by "MDT/ICB" in the Transitions Sex Offender Program (the "Transitions Program").[48] Plaintiff appealed this classification in a letter to Defendant Barnes, the Head of Classification at Howard R. Young Correctional Institution ("HRYCI") on July 16, 2019.[49] There is no evidence in the record that any DOC representative responded to this appeal.

21.     On December 19, 2019, Plaintiff was placed into the Transitions Program.[50]  He then filed a grievance with HRYCI on December 22, 2019.[51]  His grievance was denied.  At some point, Plaintiff refused to participate in the Transitions Program.  Various prison officials have threatened to "write up" Plaintiff as discipline for his refusal to participate in the Transitions Program.  Plaintiff filed the present action in this Court on March 5, 2020.[52]

---

[46] *Id.*

[47] *Id.*

[48] D.I. 8, Ex. L.  According to DOC policy, Plaintiff was to have been classified annually. Exhibit L shows the classification dated July 1, 2020.  The court draws the inference from the record that Plaintiff was classified to the Transitions Program on July 1, 2019.

[49] D.I. 8, Ex. D.

[50] D.I. 4 at Page 5 of 10.

[51] D.I. 8, Ex. C.

[52] D.I. 1.

### III.  LEGAL STANDARDS

### A.  Rule 12(c)

Pursuant to Federal Rule of Civil Procedure 12, a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial[.]"[53] When evaluating a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."[54]

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference."[55]  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[56]  Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved."[57]

### B.  42 U.S.C. § 1983

Plaintiff asserts liability against Defendants pursuant to 42 U.S.C. § 1983.[58]  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the

---

[53] Fed. R. Civ. P. 12(c).

[54] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

[55] *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 617 (D. Del. 2008) (citing Wright and Miller, *5C Fed. Prac. & Proc. Civ.3d* § 1367 (1990)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that any documents integral to pleadings may be considered in connection with Rule 12(c) motion).

[56] *Burlington Coat Factory*, 114 F.3d at 1420.

[57] *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

[58] D.I. 4.

Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[59]

### C.    Qualified Immunity

Defendants contend they are "entitled to qualified immunity" and argue that "Plaintiff has failed to make out a violation of any constitutional right" and that none of the asserted rights are clearly established.[60]  "The primary purpose of qualified immunity is to shield public officials from undue interference with their duties and from potentially disabling threats of liability."[61]  The immunity is based upon the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[62] "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[63] Courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."[64]

## IV.    ANALYSIS

This case presents a novel question of whether Plaintiff states a claim for relief for violation of his Constitutional rights when he was assigned to a sex offender treatment program in prison more than 19 years after having fully completed a sentence

---

[59] *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *see also Porter v. Pa. Dep't of Corrections*, 974 F.3d 431, 437 (3d Cir. 2020).

[60] D.I. 24 at 10-11, ¶¶ 46–50.

[61] *L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 241 (3d Cir. 2016) (quotation mark and citation omitted).

[62] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted).

[63] *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (alteration and quotation marks omitted) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[64] *Id.*

for a sex offense for which he was thereafter exempted from registration under Sections 4120 and 4121.  As to some, but not all, of these rights, Plaintiff states a claim for relief.

### A.      The State's Many Positions

This case is largely confused by the many conflicting positions the State has taken as to Plaintiff, including reneging on the misdemeanor plea deal it offered Plaintiff in 1997.  At that time, the State did not recommend that Plaintiff be registered as a sex offender under Section 4120, and it did not oppose the Superior Court's determination that Plaintiff was not a danger to others.  Next, in 1999, the State took the position that Plaintiff must complete sex offender treatment, register under Section 4120, be prohibited from possessing pornographic materials, and be prohibited from owning a computer and/or modem.[65]  Plaintiff was also required "to release information to the probation/parole officer about assessment, evaluation, or progress related to sex offender treatment."[66]  In February 2000, Plaintiff completed his sentence.[67]

In 2003 the State sought to have Plaintiff categorized as a Tier I sex offender. After Plaintiff disputed this designation and the State investigated the docket, in 2004 the State sent a letter to the court withdrawing the motion.  At the time, the State took the position that Plaintiff "has been discharged from probation" and should not be required to register under Section 4120.[68]  As a result, no offender tier was assigned to Plaintiff.[69]

---

[65] D.I. 24-1, Ex. A at Page 10 of 12–Page 11 of 12.  There is no evidence in the record that any aspect of the crime for which Plaintiff was convicted involved a computer, modem, or pornographic materials.

[66] *Id*. at Page 11 of 12.

[67] *Id*.

[68] D.I. 16-1, Ex. CE.

[69] *Id*.

The State changed its mind again in 2011 and prosecuted Plaintiff for failing to register as a sex offender.[70]  In 2012, the State assigned Plaintiff "a tier designation."[71]  Later in 2012—for a second time—Plaintiff petitioned Delaware Superior Court for relief from the Section 4120 registration requirement.[72]  In a letter to Plaintiff, Judge Brady granted that relief.[73] Thereafter, the State removed Plaintiff from the sex offender registry.[74]  By 2018, while in DOC custody, Plaintiff's prison records show that the State did not identify him as a sex offender at that time.[75]  In 2019, the DOC assigned Plaintiff to participate in the Transitions Program, a prison-based treatment program for sex offenders.[76]

### B.   How was Plaintiff assigned to the Transitions Program?

A central factual question not addressed in the pleadings is how Plaintiff was assigned to the Transitions Program.  Plaintiff alleges that he should not be in the Transitions Program, because he has been repeatedly exempted from registration under Sections 4120 and 4336.[77]  Plaintiff essentially alleges that DOC placed him in the Transitions Program by virtue of his 1997 conviction, without regard to the findings the sentencing judge made, or subsequent reaffirmations by Delaware Superior Court judges who determined that he was not required to register as a sex offender under Section 4120.[78]

---

[70] D.I. 24-1, Ex. A at Page 12 of 12.

[71] *Id*.

[72] *Id*.

[73] *Id*.

[74] *Id*.

[75] D.I. 8, Ex. K.

[76] *Id*., Ex. D (July 16, 2019 letter to Ms. Barnes concerning Plaintiff's classification); *id*., Ex. L (July 1, 2020 "Notice of Classification Assignment").

[77] *See generally*, D.I. 4.

[78] *Id*.; D.I. 27 at ¶¶ 18–19.

The State represents Defendants, who argue that these sections of the Delaware criminal code are "**entirely unrelated** to programs for sex offenders while incarcerated."[79]  Defendants maintain that Plaintiff's 1997 misdemeanor conviction is the sole reason DOC labeled Plaintiff as a sex offender and assigned him to the prison Transitions Program.[80]  In support, Defendants ask the court to look outside the pleadings to various DOC policies to explain how DOC placed Plaintiff in the Transitions Program.[81]

### 1.   DOC Policies

In the "Background and Procedural History" section of their opening brief, Defendants suggests a series of inferences as to how Plaintiff was placed in the Transitions Program.  First, Defendants cite to Section 6531,[82] which discusses "alcohol and drug counseling and treatment programs for inmates."[83]  Defendants state that "[i]nmates are required to participate in [DOC] counseling and treatment programs that

---

[79] D.I. 24 at 4, ¶¶ D.I. 16–17 (emphasis added).  This Court's Local Rules prescribe that all briefs include various contents, including a statement of the nature and stage of the proceedings; a summary of argument, setting forth in separately numbered paragraphs the legal propositions upon which the party relies; and a concise statement of facts, with supporting references to the record, presenting the background of the questions at issue.  D. Del. LR 7.1.3(c).  Instead of following this directive, Defendants have filed a brief that combines fact and argument in a single section entitled "Background and Procedural History."  D.I. 24 at 1–5.  This is wholly inappropriate, especially on a Rule 12 motion where the court is required to draw all inferences in favor of the nonmoving party.  The court credits the cited paragraphs as argument—that is, that the sections of the criminal code are "entirely unrelated to programs for sex offenders" is a statement of argument and not of fact.

[80] D.I. 24 at 7, ¶¶ 31–34.

[81] *Id.* at 2, ¶ 3 & n.2.  It is unclear, after supplementing the record with the docket of Plaintiff's earlier criminal conviction, D.I. 24-1, Ex. A, why Defendants provided no other relevant records documenting the decision to assign Plaintiff to the Transitions program.

[82] *Id.* at 1, ¶¶ 1–2 (citing 11 *Del. C.* § 6531).

[83] 11 *Del. C.* § 6531(b).  Nothing in this statute discusses treatment programs for sex offenders, so it is unclear why Defendants have cited it.

are available to them."[84]  Second, Defendants explain that "State law requires that the Department evaluate inmates using an 'objective risk and needs assessment instrument' and 'create a case plan for those persons assessed to be moderate- to high-risk that targets the need factors identified by the assessment.'"[85]  Third, Defendants state that under its Policy 4.6, DOC "will classify inmates based upon the rehabilitative needs of the inmate."[86]  Finally, Defendants argue that "[c]lassification entails both security and supervision level assignments, as well as rehabilitative programs, **such as sex offender treatment**."[87]

These "facts" as stated by Defendants suggest an inference that DOC officials evaluated Plaintiff, using objective and individualized criteria, and developed a prison rehabilitation program for him that included "sex offender treatment" in the form of the Transitions Program.  Considering that the present motion is under Rule 12(c), this is a pretty significant inference to draw in favor of a moving party, especially because the cited policies and statutes are directed to drug and alcohol rehabilitation for prisoners and do not refer to "sex offenders" or "sex offender treatment."

To be sure, DOC Policy 4.6 states that "[c]lassification criteria will include but not be limited to" five criteria.  Four of these criteria are individualized to the prisoner:  (1) "Results of DOC approved actuarial risk/needs assessments"; (2) "Consideration of

---

[84] D.I. 24 at 1, ¶ 1.

[85] *Id.* at 1, ¶ 2 (citing 11 *Del. C.* § 6531(a) and Delaware Department of Correction, *Policy 3.8: Treatment and Rehabilitation Programs* (Jun. 29, 2015), https://doc.delaware.gov/assets/documents/policies/policy_3-8.pdf).  Again, nothing in Section 6531 or Policy 3.8 discusses sex offenders, so it is unclear why Defendants ask the court to take judicial notice of these materials.

[86] *Id.* at 2, ¶ 3 (citing DOC Policy 4.6 at ¶ VI(F)).  The identified policy states that "[i]n accordance with 11 *Del. C.* § 6530, DOC will classify offenders to programming based on identified classification criteria developed to address the rehabilitative needs of the offender."  Delaware Department of Correction, *Policy 4.6: Classification*, at ¶ VI(F) (Feb. 14, 2020), https://doc.delaware.gov/assets/documents/policies/policy_4-6.pdf.

[87] *Id.* (citing DOC Policy 4.6 at ¶ IV(A)) (emphasis added).

gender, age, and criminal history"; (3) "Identification of academic, vocational, and/or treatment needs"; and (4) "Behavioral risk presented both in the institution and in the community[.]"[88]  However, the fifth criteria identifies (5) "**Statutory requirements** or prohibitions[.]"[89]  Thus, were the court inclined to take judicial notice of this policy, DOC Policy 4.6 directs that prisoners be classified according to four individualized criteria plus whatever applicable statutory requirements or prohibitions.

This statutory requirement is significant, because on the subject of inmate classification and programs, DOC representatives describe "Sex Offender Treatment" programs as "Statutory."[90]  Although it is unclear which statute DOC interprets as a direction to assign "sex offenders" to the Transitions Program, it is apparent from DOC Policy 3.7 that DOC relies on Sections 4120 and 4121 at least for an internal definition of "sex offender."[91]  In view of the limited record before the court, it is reasonable to infer that Plaintiff has been labeled as a sex offender by the DOC and has been required to participate in the Transitions Program by virtue of his 1997 conviction.

### 2.    Practical effect

Viewing these policies in the light most favorable to Plaintiff, regardless of Plaintiff's Section 4120 registration status, Delaware DOC has placed Plaintiff on a very

---

[88] Delaware Department of Correction, *Policy 4.6: Classification*, at ¶ VI(C) (Feb. 14, 2020), https://doc.delaware.gov/assets/documents/policies/policy_4-6.pdf.

[89] *Id.* (emphasis added).

[90] Delaware Department of Correction, *DOC Insider Series Webinar: Intake to Classification*, Slide: "Examples of Programs Recommended for Inmates After the Assessment Process" at 39:10, YouTube (Oct. 29, 2021) https://youtu.be/0LM9PMlsi50.

[91] Delaware Department of Correction, *Policy 3.7: Registration of Sex Offenders and Community Notification*, at ¶ IV (May 2, 2018), https://doc.delaware.gov/assets/documents/policies/policy_3-7.pdf (defining a "sex offender [] as any person who is or has been convicted of any offense(s) specified in 11 *Delaware Code* § 4120 and § 4121."); *see also id.* at ¶ I (referencing as authority, "11 *Del. C.* § 4120, § 4121, § 4122, § 4336.").  Therefore, Defendants' representation to the court that Sections 4120 and 4336 are "entirely unrelated" to Plaintiff's assignment to the Transitions Program, D.I. 24 at 4, ¶¶ 16–17, is neither accurate nor helpful.

public list of sex offenders at HRYCI by assigning him to participate in the Transitions Program.

### C.   Eighth Amendment

Plaintiff alleges that his placement in the Transitions Program amounts to cruel and unusual punishment under the Eighth Amendment.[92]  He alleges that, as a result of his placement in the Transitions Program, he was stigmatized, degraded, humiliated, and his character was defamed—that he essentially suffered emotional distress.[93] Defendants maintain that Plaintiff "neither alleged that he suffered a deprivation of any of life's minimum necessities, nor did he allege facts that show [] Defendants acted with deliberate indifference to such a risk of depr[i]vation" and this is insufficient to state a claim for violation of Eighth Amendment rights.[94]  Additionally, Defendants contend that they are entitled to qualified immunity on this claim, because Plaintiff fails to plead an Eighth Amendment claim,[95] and at the time of the underlying events, there "was no clearly-established law which finds that classifying an inmate as a sex offender and requiring participation in a sex offender treatment program, *simpliciter*, deprives the inmate of any of life's minimal necessities in violation of the Eighth Amendment's prohibition against cruel and unusual punishment[.]"[96]

The Eighth Amendment prohibits inflicting cruel and unusual punishments on any person convicted of a crime,[97] including "any punishment which violates civilized standards of humanity and decency."[98]  "To prove a violation of the Eighth Amendment,

---

[92] D.I. 4 at 5–8.

[93] *Id.* at 8.

[94] D.I. 24 at 8, ¶¶ 35–39.

[95] *Id.* at 10, ¶ 47.

[96] *Id.* at 11, ¶ 49.

[97] U.S. Const. amend. VIII.

[98] *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (citing *Young v. Quinlan,* 960 F.2d 351, 359 (3d Cir.1992)).

a plaintiff must demonstrate that prison conditions deprived him of life's minimum necessities, that the deprivation was sufficiently serious, and that 'a prison official acted with deliberate indifference in subjecting him to that deprivation.'"[99]  The Third Circuit has also recognized that "[e]motional distress can produce injury of the same severe magnitude as occurred in the cases of physical harm and withholding necessary medical care, and it can be inflicted in the same wanton and unreasonable manner."[100] However, to succeed on an Eighth Amendment claim predicated on emotional distress, the Third Circuit further requires "that the defendant's wanton and unnecessary infliction of emotional harm include an improper state of mind."[101]

The Complaint alleges that Plaintiff was "classified and placed in" the Transitions Program.[102]  Plaintiff alleges that he wrote letters that were unanswered and filed grievances that were denied.[103]  With respect to Defendant Akinbayo, the Complaint alleges that Plaintiff filed a grievance and "forwarded a letter" to him.[104]  As to Defendant Barnes, the Complaint alleges that Ms. Barnes "sent word back through one of her staff members" that Plaintiff would face disciplinary consequences for failing to participate in the Transitions Program.[105]  Similarly, the Complaint alleges that Defendant Holliway, who supervises the Transitions Program, threatened to write up Plaintiff for "lack of participation."[106]

---

[99] *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010) (quoting *Griffin*, 112 F.3d at 709).

[100] *Rhodes v. Robinson*, 612 F.2d 766, 772 (3d Cir. 1979).

[101] *Renchenski*, 622 F.3d at 338 (citing *Rhodes*, 612 F.2d at 772).

[102] D.I. 4 at 5.

[103] *Id.* at 5–6.

[104] *Id.* at 5.

[105] *Id.* at 6.

[106] *Id.* at 7.

These are two different Eighth Amendment claims.  The first is for the emotional distress associated with Plaintiff's classification as a sex offender and assignment to the Transitions Program.  The second is for the emotional distress associated with disciplinary action resulting from Plaintiff's refusal to participate in the Transitions Program.

Neither of these allegations state an Eighth Amendment claim.  Viewing the Complaint in the light most favorable to Plaintiff, there are no allegations which suggest that any of the Defendants had an improper state of mind.[107]  Instead, the injury Plaintiff has suffered—assignment to the Transitions Program—appears to be "an incidental and unintended consequence of official actions[.]"[108]  The disciplinary actions resulting from Plaintiff's refusal to participate in the Transitions Program are equally, if not moreso, remote.[109]

Having failed to plead an Eighth Amendment claim, dismissal of this claim on qualified immunity grounds is also appropriate.

### D.     Double Jeopardy

Plaintiff alleges that his Fifth Amendment right against double jeopardy has been violated by his placement in the Transitions Program.[110]  Defendants argue that the Transitions Program "is not punishment," and therefore Plaintiff's assignment to the program cannot be "further punishment for a crime for which he was previously punished."[111]  Defendants maintain that the failure of this claim and the absence of

---

[107] *Contra Dongarra v. Smith*, 27 F.4th 174, 179 (3d Cir. 2022) (citation omitted) ("Once Smith knew that prisoners might target Dongarra, he had to do more to protect him.  But Smith never did.  So, if the complaint's allegations are true, he violated the Eighth Amendment.").

[108] *Rhodes*, 612 F.2d at 772.

[109] *Id.*

[110] D.I. 4 at 5.

[111] D.I. 24 at 8–9, ¶ 40.

clearly-established law "which provides that an inmate's placement in a sex offender treatment program violates the Fifth Amendment's prohibition against Double Jeopardy" justifies dismissal on qualified immunity grounds.[112]

The Double Jeopardy Clauses provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."[113] "This protection applies both to successive punishments and to successive prosecutions for the same criminal offense."[114] Under the *ex post facto* clause, "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts."[115]

### 1.   The double jeopardy claim

Defendants maintain that, as matter of law, Plaintiff's assignment to the Transitions program does not invoke double jeopardy, because "[i]n the instant matter, there is no allegation that the Sex Offenders Transition Program is in any way meant to punish, nor is there any indication that it objectively seeks to punish."[116] In support, Defendants provide a string cite[117] to a line of cases evaluating whether a requirement for a prisoner to attend a sex offender treatment program **as a condition of parole** violates the *ex post facto* clause.[118] No facts in the record indicate that Plaintiff was

---

[112] *Id.* at 10, ¶ 47; 11, ¶ 50.

[113] U.S. Const. amend. V.

[114] *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citation omitted).

[115] *Collins v. Youngblood*, 497 U.S. 37, 43 (1990).

[116] D.I. 24 at 9, ¶ 43.

[117] *Id.*

[118] *Thompson v. Lappin*, No. CIV. 07-2694 (JAP), 2008 WL 4661614, at *2 (D.N.J. Oct. 20, 2008) (finding sex offender treatment as a condition of parole to not be additional punishment); *Olivier v. Craven*, No. CV-05-331-S-BLW, 2007 WL 2461986, at *3 (D. Idaho Aug. 27, 2007) ("The recommendation or requirement by the Parole Commission that Plaintiff complete a sex offender treatment program prior to being eligible for parole does not violate the Ex Post Facto Clause."); *Johnson v. Johnson*, No. 4:00-CV-1889-A, 2001 WL 881284, at *3 (N.D. Tex. July 26, 2001) (finding under Texas law that a sex offender treatment program as a required condition of parole did not violate the *ex post facto* clause).

assigned to the Transitions program as a condition of parole.[119]  Absent these facts, the court declines to speculate.

Defendants have attached a record of Plaintiff's sexual offense conviction to their brief.[120]  Some 20 years ago, the State released Plaintiff on the "special conditions of supervision" that he participate in a "sex offender relapse prevention education group at the day reporting center," and disclose "information to the probation/parole officer about assessment, evaluation, or progress related to sex offender treatment."[121]  It is undisputed that he satisfied the terms of his release and his sentence was discharged as unimproved.[122]  Today, Plaintiff is in prison, and he has been required to attend the Transitions program,[123] not as a condition of parole, but, Defendants argue, as the result of Plaintiff's prior conviction.[124]  Viewing this record in the light most favorable to Plaintiff, common sense suggests that Plaintiff's assignment to the Transitions program is likely a "successive punishment[]" for the 1997 conviction.[125]  Therefore, Plaintiff has stated a double jeopardy claim.

### 2.      Qualified immunity

With respect to the qualified immunity, Defendants cite (without explanation) to the *Kansas v. Hendricks* case and argue that "[t]here was no clearly-established law which provides that an inmate's placement in a sex offender treatment program violates the Fifth Amendment's prohibition against Double Jeopardy at the time of the underlying

---

[119] *See supra* Section IV.B.

[120] *See generally* D.I. 124-1, Ex. A.

[121] D.I. 124-1, Ex. A at page 10 of 12–page 11 of 12.

[122] *Id.*

[123] D.I. 8, Ex. L.

[124] D.I. 24 at 7, ¶¶ 31–34.

[125] *United States v. Dixon*, 509 U.S. 688, 696 (1993) .

events."[126]  Plaintiff maintains that the Transitions Program is a punishment that is included as part of sentencing and is part of reentry for individuals who will ultimately be on the sex offender registry.[127]

Defendants work in criminal justice and play roles in incarcerating individuals according to sentences imposed by State courts.  They are tasked with understanding and enforcing those sentences.  To accomplish this, Defendants regularly access criminal records, court dockets, and sentencing materials.[128]  In this matter, Defendants had access to Plaintiff's record and knew of his prior conviction, the sentence, and the terms of his release.  Defendants specifically knew that Plaintiff had completed a sex offender treatment program in 1999.  Defendants also knew that Plaintiff had successfully fought placement on the sex offender registry and that (as a result) DOC does not identify Plaintiff as a "sex offender" on his Offender Status Sheet.  When Plaintiff raised these facts and appealed to Defendants, they did nothing and instead threatened him with disciplinary action.

A reasonable person working in criminal justice would know that Plaintiff's had completed the sentence on his 1997 conviction and had not committed a subsequent sexual offense.  Such a person would also understand the difference between assigning treatment as a condition of parole and assigning treatment as a condition of confinement.  Defendants argue that Plaintiff was assigned to the Transitions program as a condition of his confinement, despite his having already completed such a program as part of his prior sentence.  In view of the Constitutional protections against double

---

[126] D.I. 24 at 11, ¶ 49 (citing *Kansas v. Hendricks*, 521 U.S. 346, 361–62 (1997)). Defendants' citation to *Hendricks* sheds no light on the issue of qualified immunity.  In that case, the Supreme Court addressed the question of whether a civil commitment statute is "punishment"—it did not address the question of whether a sex offender treatment program is punishment for purposes of double jeopardy.  *Hendricks*, 521 U.S. at 361–62.

[127] D.I. 27 at 18.

[128] *E.g.*, D.I. 8, Ex. K (Plaintiff's Offender Status Sheet).

jeopardy, Plaintiff's double jeopardy claim is very clear.  On this basis, Defendants' motion is denied.

### E.    Due Process

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."[129]  When reviewing a procedural due process claim, courts follow a two-step process.  First, the court determines whether the plaintiff asserts an interest protected by the Fourteenth Amendment.[130] Second, "[i]f the court concludes that such an interest exists, the next issue is whether the procedures provided to the plaintiff afforded that individual due process of law."[131]

The Third Circuit has stated: "[i]t is largely without question . . . that the sex offender label severely stigmatizes an individual, and that a prisoner labeled as a sex offender faces unique challenges in the prison environment."[132]  In *Renchenski v. Williams*, the Third Circuit held "that the stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest emanating from the Due Process Clause of the Fourteenth Amendment."[133]  In recognizing this liberty interest, the *Renchenski* court stated that "only after a prisoner has been afforded due process may sex offender conditions be imposed on an inmate who has not been convicted of a sexual offense."[134]

In view of this liberty interest, the *Renchenski* court considered the fact that a prisoner had not been convicted of a sex crime but that he had a "first degree murder conviction" in view of what it considered to be "the strong State interest in administering

---

[129] U.S. Const. amend. XIV, § 1.

[130] *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010) (citing *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)).

[131] *Id.*

[132] *Id.* at 326.

[133] *Id.* at 328.

[134] *Id.* at 326.

rehabilitative programs and maintaining order within the prison[.]"[135]  The court held that the state Defendants did not need to "commence 'a new adversary criminal trial' before labeling Mr. Renchenski a sex offender and recommending him for therapy."[136]  The *Renchenski* court outlined a process which Mr. Renchenski should be afforded, including:  written notice, a hearing, an opportunity to present witness testimony and to confront and cross-examine witnesses, administration of the hearing by an independent decisionmaker; a written statement by the decisionmaker as to the evidence relied on and the reasons for Renchenski's classification; and effective and timely notice.[137]

Defendants cite the *Renchenski* opinion and argue, "[h]owever, the Third Circuit does not extend this rationale" of recognizing "**a liberty interest** in not being labeled as a sex offender and required to participate in sex offender therapy . . . . to inmates compelled to participate in a sex offender program who have been convicted of a sexual offense."[138]  The *Renchenski* court made no such holding.  In fact, that question was never before the court, and is contrary to the law cited by the Third Circuit in *Renchenski*.  For example, in *Neal v. Shinoda* the Ninth Circuit recognized a liberty interest in not being labeled as a sex offender in prison, even for an individual convicted of a sex offense.[139]

After finding that the liberty interest applies, the *Neal* court found under the second prong of the due process analysis that "[a]n inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial,

---

[135] *Id.* at 331.

[136] *Id.*

[137] *Id.*

[138] D.I. 24 at 7, ¶ 29 (emphasis added) (citing *Renchenski*, 622 F.3d at 326, 331.).

[139] *Neal v. Shimoda*, 131 F.3d 818, 829 (9th Cir. 1997) (citing *Sandin v. Conner*, 515 U.S. 472, 482 (1995)) ("The classification of an inmate as a sex offender is precisely the type of 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' that the Supreme Court held created a protected liberty interest.").

or plea agreement, has received the minimum protections required by due process."[140]
In applying the Hawaiian law at issue in that case, the *Neal* court stated that "[p]rison
officials need do no more than notify such an inmate that he has been classified as a
sex offender because of his prior conviction for a sex crime."[141]  Defendants argue in
the alternative that the Third Circuit has followed the Ninth Circuit's holding in *Neal*.[142]
In *Clark v. Coupe*, the Third Circuit considered a Delaware inmate's *pro se* challenge to
being classified as a sex offender and required to participate in the prison's sex offender
treatment program.[143]  The *Clark* court stated "[i]n this case, Clark received adequate
process because his sex offender classification was based on a prior criminal
conviction."[144]

Plaintiff maintains that this case law is inapposite, because in none of these
cases "was the petitioner exempt from the sex registry or the provisions or obligations of
that statute thereof."[145]  Plaintiff also argues that the Transitions program is for sex
offenders who are court ordered to participate in it as part of their probation and
transition back to society, where they will be required to report to the Delaware State
Police to verify sex offender registry information.[146]

The court agrees with Plaintiff—*Clark* is a nonprecedential decision that is
obviously limited to facts of the case.  The *Clark* opinion does not discuss the processes
associated with Delaware's registry exemption.[147]  Moreover, the question of registry

---

[140] *Id.* at 831.

[141] *Id.*

[142] D.I. 24 at 7, ¶ 30.

[143] *Clark v. Coupe*, 632 F. App'x 85 (3d Cir. 2016) (nonprecedential).

[144] *Id.* (citing *Neal*, 131 F.3d at 831 and *Renchenski*, 622 F.3d at 331).

[145] D.I. 27 at ¶¶ 16–17.

[146] *Id.* at ¶ 18.

[147] *Clark*, 632 F. App'x at 85 n.* ("This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.").

exemption was also not present in either *Neal* or *Renchenski*.  In view of Sections 4120, 4121, and 4122 and the above facts, Defendants, who are represented by the State, contend that none of these facts are relevant to the decision to classify Plaintiff as a sex offender in prison and to assign him to the Transitions program.  Instead, they argue, he deserves no additional procedural due process.[148]  This runs contrary to the State's own policies and the processes afforded by the Delaware legislature.

First, and at a minimum, DOC's own stated policies are that "[t]he classification system for offenders sentenced to Level V will include an appeal process."[149]  Plaintiff has been sentenced to Level V and is incarcerated as a result.  There is no evidence in the record that Plaintiff was able to appeal his classification as a sex offender and assignment to the Transitions program.  In fact, when Plaintiff was provided with "Notice of Classification Assignment" to the Transitions program by "MDT/ICB," that notice stated that he did not have the right to appeal the classification decision.[150]  Therefore, viewing the record including DOC Policy 4.6 in the light most favorable to Plaintiff, by disallowing an appeal of his placement into the Transitions Program, Plaintiff has been denied the due process created by the State.  Therefore, Plaintiff has stated a claim for relief.

Second, the Delaware legislature has created processes for individuals convicted of sexual offenses to challenge their tier designations and to ultimately be removed from the sex offender registry.  In Section 4121, the Delaware legislature defined the term "sex offender" and created a tier system for classifying these offenders.  Section 4120

---

[148] D.I. 24 at 7, ¶ 34.

[149] Delaware Department of Correction, *Policy 4.6: Classification*, at ¶ VI(E) (Feb. 14, 2020), https://doc.delaware.gov/assets/documents/policies/policy_4-6.pdf

[150] *See* D.I. 8, Ex. L (emphasis added) ("You have the right to appeal classification decisions **resulting in an increase in security level only**. Appeal must be filed within 10 days of receipt of this notice. Appeals of IBCC decisions are to be sent to the Warden of the Institution, appeals of CICB decisions are to be sent to the Classification Administrator.").

governs the registration itself.  For individuals such as Plaintiff, who were sentenced prior to the creation of the tier system, Section 4122 provides "Transitions provisions" by which individuals may petition Superior Court to challenge a retroactive tier designation. And for individuals who have successfully completed their sentences, Section 4121(e)(2)(c) provides that:

> Any sex offender designated to Risk Assessment Tier I may petition the Superior Court for relief from designation as a sex offender, and from all obligations imposed pursuant to this section and § 4120 of this title, if 10 years have elapsed from the last day of any Level IV or V sentence imposed at the time of the original conviction, or from the date of sentencing if no Level IV or V sentence was imposed, and if the offender has successfully completed an appropriate sex offender treatment program certified by the State and has not been convicted of any crime (other than a motor vehicle offense) during such time.[151]

The record shows that Plaintiff has availed himself of this process on multiple occasions.  Even after the sentencing judge ordered that Plaintiff was not required to register under Section 4120, when Plaintiff was sentenced for a DUI, the State forced Plaintiff to register as a sex offender and to complete a sex offender treatment program. By all accounts, he completed this program and the other terms of his sentence.  When the State moved to assign a tier designation, Plaintiff availed himself of the process in Section 4122 and opposed the motion.  The State ultimately dropped the motion to assign a tier designation.  Years later, after the State assigned Plaintiff a tier designation and required him to register under Section 4120, Plaintiff again employed the processes in Sections 4122 and 4121 and petitioned Superior Court for relief.  The Superior Court granted that relief—Plaintiff was removed from the sex offender registry and was no longer required to register.

---

[151] 11 Del. C. § 4121(e)(2)(c).

DOC relies on these statutes for its own internal definition and identifies them specifically in the "Authority" section of Policy 3.7, which states "[a] sex offender is defined as any person who is or has been convicted of any offense(s) specified in 11 *Delaware Code* §4120 and §4121."[152]  In terms of classification, DOC own materials state that "sex offender" classification and program assignment are "statutory."[153]  The present record does not clarify which statute requires DOC to assign all "sex offenders" to the Transitions program nor does the record disclose the method applied to Plaintiff's classification and assignment.[154]  Regardless, the Delaware legislature has defined processes in Sections 4121, and 4122 for individuals to challenge their tier designations and to be removed from the sex offender registry under certain conditions.  Viewing the record in the light most favorable to Plaintiff, it is difficult to conclude that the Delaware legislature intended for DOC to apply the definitions found in Sections 4120 and 4121 and to wholly discount the exemptions found in Section 4121.  Plaintiff, thus, states a claim for relief as to these sections.  On these bases, Defendants' motion as to due process is denied.

With respect to qualified immunity, Defendants maintain that "there was no clearly-established law requiring prison officials to provide additional procedural due process prior or subsequent to enrolling a convicted sex offender in a sex offender treatment program at the time of the underlying events in this matter."[155]  Viewing DOC Policy 4.6 and Sections 4121 and 4122 in the light most favorable to Plaintiff, these materials are clearly established policies and statutes that DOC officials are tasked with enforcing and enacting on a daily basis.  To claim that Defendants are unaware of this

---

[152] Delaware Department of Correction, *Policy 3.7: Registration of Sex Offenders and Community Notification*, at ¶ IV. Definitions (May 2, 2018), https://doc.delaware.gov/assets/documents/policies/policy_3-7.pdf.

[153] *See supra* note 90.

[154] *See supra* Section IV.B.

[155] D.I. 24 at 10–11, ¶ 48.

policy and the related statutes would be to assert that Defendants are essentially incompetent at their job.[156]  Therefore, qualified immunity is inappropriate.

## V.   ORDER

Therefore, IT IS HEREBY ORDERED that Defendants' motion for judgment on the pleadings[157] is GRANTED-IN-PART and DENIED-IN-PART as follows:

1.      Defendants' motion for judgment on the pleadings for failure to state an Eighth Amendment claim is GRANTED.  Plaintiff's Eighth Amendment claim is DISMISSED;

2.      Defendants' motion for judgment on the pleadings on qualified immunity grounds with respect to each individual Defendant as to Plaintiff's Eighth Amendment claim is GRANTED.  The individual Defendants are DISMISSED from this claim;

3.      Defendants' motion for judgment on the pleadings for failure to state a Double Jeopardy claim is DENIED;

4.      Defendants' motion for judgment on the pleadings on qualified immunity grounds with respect to each individual Defendant as to Plaintiff's Double Jeopardy claim is DENIED.

5.      Defendants' motion for judgment on the pleadings for failure to state a due process claim is DENIED;

6.      Defendants' motion for judgment on the pleadings on qualified immunity grounds with respect to each individual Defendant as to Plaintiff's due process claim is DENIED.


Dated:   January 3, 2023                          _____/s/ Mary Pat Thynge_____
                                                                      Chief U.S. Magistrate Judge

---

[156] *Cf. Taylor v. Barkes*, 575 U.S. at 825 ("When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.").

[157] D.I. 24.