IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN E. TROTTER,<br><br>                     Plaintiff,<br><br>     v.<br><br>WARDEN KOLAWOLE AKINBAYO and JENNIFER BARNES,<br><br>                     Defendants. | Civil Action No. 20-336-GBW-CJB |

## MEMORANDUM ORDER

On October 1, 2024 and October 2, 2024, this Court presided over a two-day jury trial on the claim of 42 U.S.C. § 1983 violations brought by Plaintiff John Trotter ("Plaintiff" or "Trotter") against Defendants Kolawole Akinbayo ("Akinbayo") and Jennifer Barnes ("Barnes") (collectively, "Defendants"). *See* D.I. 91. The jury found in favor of Defendants on each issue the jury was asked to decide. *See* D.I. 117. The parties requested that the Court provide rulings on several issues of law. *See* D.I. 118 at 1; D.I. 119 at 1. Specifically, the Court was asked to decide the following legal issues: (1) whether Trotter was properly considered a sex offender for purposes of being assigned to the Transitions Sex Offender Program at the time of his 2016-2022 incarceration; (2) whether Trotter had a liberty interest in not being assigned to the Transitions Sex Offender Program and, if so, whether Trotter was denied his due process rights; and (3) whether qualified immunity applies to Defendants under the circumstances. D.I. 120 ¶ 1.

**I.    BACKGROUND**

At the pre-trial conference, the parties requested that the Court decide various issues. *See* D.I. 93. In light of the issues the parties raised, "the Court request[ed] briefing on (1) whether Plaintiff John Trotter was a sex offender at the time of the alleged conduct; (2) whether Defendants

are entitled to qualified immunity; (3) whether Plaintiff John Trotter possessed a liberty interest in not being assigned to the Transitions program; and (4) whether these issues are for the Court or the jury to decide." D.I. 93. The parties complied with the request for briefing. *See* D.I. 97; D.I. 103; D.I. 106. Given those issues were unresolved before trial, the Court recommended, and the parties agreed, that the jury would decide all material factual disputes related to the outstanding legal issues. *See* Day 1 Trial Tr. at 7:17-20:5.[1]

Based on the parties' joint verdict form, the jury expressly answered the following four questions: (1) "Did placement in the Transitions Sex Offender Program constitute 'punishment'?"; (2) "Did Plaintiffs 'sex offender classification' and placement in the Transition[]s Sex Offender Treatment Program cause him an atypical and significant hardship, or constitute a dramatic departure from the basic conditions of his sentence?"; (3) "If the Court finds that Plaintiff John Trotter's Fifth Amendment right against double jeopardy was violated, did Defendant Jennifer Barnes personally participate in that violation?"; (4) "If the Court finds that Plaintiff John Trotter's Fourteenth Amendment due process rights were violated, did Defendant Jennifer Barnes personally participate in that violation?" D.I. 117 at 1 (first quote), 3 (second quote), 5 (third quote), 7 (fourth quote); *see* Day 2 Trial Tr. at 199:13-201:8. Given the jury answered "no" to each of those four preceding questions, the jury did not expressly answer the other twenty-two questions. *See* D.I. 117 at 1-9.

---

[1] Trotter "had the right to a jury trial on [his] § 1983 claim[s]." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 731 (1999) (Scalia, J., concurring in part and concurring in the judgment). Trotter exercised that right and demanded a jury trial. *See* D.I. 4 at 1. Contrary to Trotter's assertion, *see* D.I. 118 at 2-3, the Court did not agree, nor was it timely asked, to serve as a fact finder for factual issues that should have been presented to the jury. Trotter has provided zero legal support for his contention that factual issues that a party fails to put before a jury are "expressly reserved for the Court." D.I. 118 at 3.

At the close of trial, the Court instructed the parties to identify any outstanding issues of law for the Court to decide, in light of the jury's verdict. Day 2 Trial Tr. at 201:19-22. In response, Trotter contended that "the Court must decide the following issues: (1) whether Plaintiff John Trotter was properly considered a sex offender at the time of his 2016-2022 incarceration; (2) whether John Trotter possessed a liberty interest in not being assigned to the Transitions Sex Offender Program, and if so, whether Trotter was deprived of his due process rights in view of that liberty interest." D.I. 118 at 1. As to the first issue, Trotter contends that whether "th[e] 'Sex Offender' designation was incorrect as a matter of law . . . may be a basis (or a part of a basis) for a posttrial motion under FRCP 50 and/or 59." D.I. 118 at 1. As to the second issue, Trotter contends that he is "not [] able to assess whether the [j]ury's answer to Question No. 18[2] (which was 'No') was clearly erroneous," until the Court decides "whether Trotter's Fourteenth Amendment due process rights were violated." D.I. 118 at 2. Defendants disagree on all points. After the jury's verdict, Defendants contended that the Court need not decide any of the legal issues that were raised before trial. *See* D.I. 119 at 1-2.

As noted above, "[i]n light of the parties failure to reach agreement on what legal issues, if any, remain[ed] for the Court to decide given the jury's verdict following the trial . . . the Court [stated it] w[ould] rule on the following legal issues: (1) whether Plaintiff John E. Trotter ('Plaintiff Trotter') was properly considered a sex offender for purposes of being assigned to the Transitions Sex Offender Program at the time of his 2016-2022 incarceration; (2) whether Plaintiff Trotter had a liberty interest in not being assigned to the Transitions Sex Offender Program and, if so, whether

---

[2] Question 18 of the verdict form asks: "If the Court finds that Plaintiff John Trotter's Fifth Amendment right against double jeopardy was violated, did Defendant Jennifer Barnes personally participate in that violation?" D.I. 117 at 18.

Trotter was denied his due process rights; and (3) whether qualified immunity applies to Defendants under the circumstances." D.I. 120 ¶ 1.

## II.  DISCUSSION

As discussed below, the Court finds that: (a) Trotter "was properly considered a sex offender for purposes of being assigned to the Transitions Sex Offender Program at the time of his 2016-2022 incarceration" and (b) "qualified immunity applies to Defendants." D.I. 120 ¶ 1. Accordingly, the Court does not reach "whether Plaintiff Trotter had a liberty interest in not being assigned to the Transitions Sex Offender Program and, if so, whether Trotter was denied his due process rights." D.I. 120 ¶ 1.

### A.  Trotter Was Properly Considered a Sex Offender for Purposes of Being Assigned to the Transitions Sex Offender Program

"Trotter [contends that he] is not a 'sex offender' under Delaware law and thus was improperly considered a sex offender for purposes of being assigned to Transitions at the time of his 2016-2022 incarceration." D.I. 121 ¶ 23. Defendants disagree. Defendants respond that "Plaintiff is a sex offender under Delaware state law." D.I. 122 at 9. As discussed below, the Court finds that Trotter "was properly considered a sex offender for purposes of being assigned to the Transitions Sex Offender Program at the time of his 2016-2022 incarceration." D.I. 120 ¶ 1.

"[T]he Delaware Legislature, in 2007, created the Delaware Sex Offender Management Board." *Fletcher v. State*, No. 0404010688, 2008 WL 2912048, at *28 (Del. Fam. Ct. June 16, 2008); *see* Del. Code Ann. tit. 11, § 4120A; *Lamberty v. State*, 108 A.3d 1225, ¶ 8, 2015 WL 428581, *2 (Del. 2015) (nonprecedential). Under Section 4120A, the Sex Offender Management Board is tasked to "develop and standardize the evaluation, identification, classification, treatment, and continued monitoring of *sex offenders* at each stage of the criminal justice system so that such offenders will curtail recidivistic behavior and the protection of victims and potential victims will

be enhanced." Del. Code Ann. tit. 11, § 4120A(a) (emphasis added). Moreover, "[e]ach sex offender sentenced by a court for an offense committed on or after January 1, 2010, shall be required, as a part of any sentence to probation, community corrections, or incarceration with the Department of Correction, to undergo treatment to the extent appropriate to such offender based upon the recommendations of the evaluation and identification." Del. Code Ann. tit. 11, § 4120A(e).

In the context of Section 4120A, "unless the context otherwise requires, . . . '[s]ex offender' or 'offender' means any person who has ever been convicted or adjudicated of an offense as defined in Title 11, §§ 761 and 4121(a)(4) of this title." Del. Code Ann. tit. 11, § 4120A(b)(2). Under Section 761 of Title 11, "'[s]exual offense' means *any offense defined by §§ 763 through 780*, 783(4), 783(6), 783A(4), 783A(6), 787(b)(3), 787(b)(4), 1100A, 1108 through 1112B, 1335(a)(6), 1335(a)(7), 1352(2), and 1353(2), and 1361(b) of this title." Del. Code Ann. tit. 11, § 761(i) (emphasis added). Under Section 4121(a)(4) of Title 11, "'[s]ex offender' means any person who is, or has been: "a. [c]onvicted of *any of the offenses specified in §§ 765 through 780*, § 787(b)(3)-(4), § 1100A, §§ 1108 through 1112B, § 1335(a)(6), § 1335(a)(7), § 1352(2), § 1353(2) or § 1361(b) of this title, or of any attempt or conspiracy to commit any of the aforementioned offenses; . . . ." Del. Code Ann. tit. 11, § 4121(a)(4).

1. **Trotter is a "sex offender" under Section 4120A**

Trotter is properly considered a sex offender for the purposes of Section 4120A, because Trotter was previously "*convicted*[3] or adjudicated of an offense as defined in Title 11, §§ 761 and

---

[3] "When used in this subchapter: . . . . (2) 'Conviction' and 'convicted' shall include, in addition to their ordinary meanings, adjudications of delinquency and persons who enter a plea of guilty, or are found guilty but mentally ill or not guilty by reason of insanity, as provided in § 401 of this title." Del. Code Ann. tit. 11, § 4121(a).

5

4121(a)(4)." Del. Code Ann. tit. 11, § 4120A(b)(2) (emphasis added). Specifically, in the context of Section 4120A, Trotter is a sex offender, because Trotter previously plead guilty to violating 11 Del. C. § 767. *See* Day 1 Trial Tr. at 81:18-20, 103:8-11, 155:12-17, 166:17-18; *Trotter v. Akinbayo*, No. CV 20-0336-MPT, 2023 WL 22133, at *1 (D. Del. Jan. 3, 2023) (citing 11 Del. C. § 767) ("Plaintiff [Trotter] was convicted of unlawful sexual contact in the third degree."). Trotter's guilty plea qualifies as a conviction, under both the relevant statutory definition and the ordinary meaning of that word. *See* Del. Code Ann. tit. 11, § 4121(a)(2) ("'Conviction' and 'convicted' shall include . . . persons who enter a plea of guilty."); Del. Code Ann. tit. 11, § 222 ("When used in this Criminal Code: . . . . (3) 'Conviction' means a verdict of guilty by the trier of fact, whether judge or jury, or a plea of guilty or a plea of nolo contendere accepted by the court."); *Sheppard v. State*, 367 A.2d 992, 994 (Del. 1976) ("A plea of guilty is more than a confession; it is itself a conviction."); *see also* 2023 WL 22133, at *1 (citing 11 Del. C. § 767) ("Plaintiff [Trotter] was convicted of unlawful sexual contact in the third degree.").

The Court is not convinced otherwise by Trotter's reliance on *State v. Mellon*, 905 A.2d 138 (Del. Fam. Ct. 2006). *See* D.I. 97 at 4-5. *State v. Mellon* did not interpret the definition of sex offender in the context of Section 4120A. Further, *State v. Mellon* was decided before 11 Del. C. § 4121(a)(2) was amended to include the phrase "persons who enter a plea of guilty." *Compare* 11 Del. C. § 4121(a)(2) (eff. between 2003 and 2007) ("'Conviction' and 'convicted' shall include, in addition to their ordinary meanings, adjudications of delinquency and persons found guilty but mentally ill or not guilty by reason of insanity, as provided in § 401 of this title."), *with* 11 Del. C. § 4121(a)(2) (eff. since 2015) ("'Conviction' and 'convicted' shall include, in addition to their ordinary meanings, adjudications of delinquency and persons who enter a plea of guilty, or are found guilty but mentally ill or not guilty by reason of insanity, as provided in § 401 of this title.").

The Court also is not convinced by Trotter's reliance on 11 Del. C. §§ 4120 and 4121. Here, even assuming *arguendo* that Trotter is not a sex offender in the context of Section 4120 and Section 4121, that is irrelevant in determining whether Trotter meets Section § 4120A(b)(2)'s definition of sex offender.

**B.     Qualified Immunity Applies to Defendants**

"Defendants [contend that they] are entitled to qualified immunity with respect to Plaintiff's due process and double jeopardy claims." D.I. 122 at 10. Specifically, Defendants contend that Trotter "did not have any clearly established statutory or constitutional right not to be assigned to Transitions while incarcerated." D.I. 122 at 10 (emphasis removed).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).[4] The Court is "free to address those questions in the order [it] choose[s]." *Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 642 (3d Cir. 2024); *see Reichle v. Howards*, 566 U.S. 658, 664 (2012).

"To overcome qualified immunity, a plaintiff must at the appropriate time 'show[ ] . . . that the right was clearly established at the time of the challenged conduct." *Winter v. Richman*, No. CV 17-1322-LPS, 2020 WL 6940760, at *4 (D. Del. Nov. 25, 2020) (some alterations in original) (quoting *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-69 (3d Cir. 2016)); *see Jackson v. Phelps*, 575 F. App'x 79, 82 (3d Cir. 2014) (nonprecedential). "To determine whether the right was clearly established, we examine the state of the relevant law when

---

[4] "Qualified immunity is an affirmative defense . . . . [that] may be raised at any time, even after trial, so long as the plaintiff suffers no prejudice." *Sharp v. Johnson*, 669 F.3d 144, 158 (3d Cir. 2012).

the violation allegedly occurred." *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 117 F.4th 503, 515 (3d Cir. 2024). "[W]e must 'define the right allegedly violated at the appropriate level of specificity' to determine 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* at 516 (footnotes omitted) (first quoting *Sharp*, 669 F.3d at 159; and then quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "A right is clearly established where existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Id.* at 515 (quoting *al-Kidd*, 563 U.S at 741).[5] "[A] judge's ability to discern boundaries between cases in the quietude of chambers does not necessarily translate to what 'every reasonable official would [have understood]' in conducting an" action. *Rivera-Guadalupe v. City of Harrisburg*, ___ F.4th ___, No. 21-1246, 2024 WL 5205513, at *5 (3d Cir. Dec. 24, 2024) (alteration in original) (quoting *al-Kidd*, 563 U.S at 741). "[T]he 'salient question' is whether the state of the law gives defendants 'fair warning' that their alleged conduct was unconstitutional." 117 F.4th at 525-26 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

As discussed below, the Court finds that qualified immunity applies to Defendants, because Plaintiff has failed to prove that the purported rights, which were allegedly violated, were clearly established at the time of the challenged conduct.

1. **Qualified immunity applies to the alleged "violation of procedural due process rights"**

As to the alleged "violation of procedural due process rights," D.I. 97 at 14, Trotter contends that his "right was clearly established via two independent legal bases." D.I. 97 at 15.

---

[5] Generally, "[t]he extant case law must be derived from established Supreme Court and Third Circuit precedent, or 'state law and rules' and their interpretation by the highest court in that state when determining the contours of a state-granted right." *Montemuro*, 99 F.4th at 645 (citations omitted) (quoting *Thompson v. State of Delaware Dep't of Servs. for Child., Youth & Their Fams.*, 44 F.4th 188, 194 (3d Cir. 2022)); *see Rivera v. Redfern*, 98 F.4th 419, 423-25 (3d Cir. 2024).

The due protection clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. A court reviewing a claim arising thereunder "must first 'determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment.'" *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011) (quoting *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir.2010)). Without a "constitutionally protected interest," the "inquiry stops." *Id.* With a constitutionally protected interest, the inquiry "becomes what process is due to protect it." *Id.*

First, Trotter contends he had a "right to an appeal [as] set forth in the DOC regulations, specifically, Policy No. 4.6." D.I. 97 at 15. However, even assuming *arguendo* that Trotter did have such a right under DOC regulations, the Court is not convinced that DOC regulations by themselves can establish a relevant right is clearly established for the purpose of qualified immunity. *See* cases cited *supra* note 5; *see also Eades v. Wetzel*, 841 F. App'x 489, 492 n.2 (3d Cir. 2021) (nonprecedential) (quoting *Walker v. Coffey*, 905 F.3d 138, 150 n.63 (3d Cir. 2018)) ("[O]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984) ("[O]fficials sued for violations of rights conferred by a statute or regulation, like officials sued for violation of constitutional rights, do not forfeit their immunity by violating some other statute or regulation. Rather, these officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages. And if a statute or regulation does give rise to a cause of action for damages, clear violation of the statute or regulation forfeits immunity only with respect to damages caused by that violation."); *Clark v. Coupe*, No. CV 14-763-SLR, 2015 WL 4477698, at *3 (D. Del. July 22,

2015) ("[T]his court has repeatedly determined that the DOC statutes and regulations do not provide prisoners with liberty or property interests protected by the Due Process Clause. . . . More specifically, neither Delaware law nor DOC regulations create a liberty interest in a prisoner's classification within an institution.") *aff'd*, 632 F. App'x 85 (3d Cir. 2016).

Second, Trotter contends he had a "right to not be assigned to Transitions," in light of *Renchenski v. Williams*, 622 F.3d 315 (3d Cir. 2010). D.I. 97 at 16. In *Renchenski*, the Third Circuit held that "the stigmatizing effects of being labeled a sex offender, when coupled with mandatory behavioral modification therapy, triggers an independent liberty interest emanating from the Due Process Clause of the Fourteenth Amendment." 622 F.3d at 328; *see Wilson v. Smith*, No. 23-11666, 2024 WL 4349179, at *10 (E.D. Mich. Sept. 30, 2024) (summarizing that the *Renchenski* court "held that the classification of an inmate as a 'sex offender' where he has not been convicted of a 'sex offense' implicates a free-standing liberty interest that may trigger due process protections"). The Court is not convinced, however, that *Renchenski* provided Defendants with fair warning that their alleged conduct was unconstitutional. In *Renchenski*, not only was the prisoner subject to the "the stigmatizing effects of being labeled a sex offender," the prisoner in *Renchenski* was also subject to "mandatory behavioral modification therapy." 622 F.3d at 328. Moreover, in *Renchenski*, the prisoner "was never charged with, nor convicted of, a sex offense." 622 F.3d at 331; *see* 2024 WL 4349179, at *10.

Here, the record does not reflect that Trotter was subjected to anything akin to mandatory behavioral modification therapy. On the contrary, the jury found that Trotter failed to prove that his "'sex offender classification' and placement in the Transition's Sex Offender Treatment Program cause[d] him an atypical and significant hardship, or constitute[d] a dramatic departure from the basic conditions of his sentence." D.I. 117 at 3; *see id.* at 1 (jury finding that Trotter's

"placement in the Transitions Sex Offender Program [was not proven to] constitute 'punishment'").

Moreover, in light of *Clark v. Coupe*, the Court is not convinced that, at the time of the alleged violation, it was beyond debate that the purported right was clearly established. In *Clark v. Coupe*, the trial judge held that no due process violation occurred when a prisoner was classified as a sex offender based on a prior sex offense conviction. 2015 WL 4477698, at *3 ("Here, plaintiff was previously convicted of a sex offense. Even though the conviction was in 1983 and plaintiff is now serving a separate sentence, prison officials may consider a prisoner's criminal history when making an initial classification determination. The court concludes that the classification procedure was adequate to provide due process."). In affirming, the Third Circuit highlighted that "Clark received adequate process because his sex offender classification was based on a prior criminal conviction." 632 F. App'x at 86; *see id.* ("Clark's challenge cannot succeed because his sanction for assignment to sex-offender treatment rested on a prior conviction.").[6] Like the prisoner in *Clark v. Coupe*, Trotter was properly considered as a sex offender, due to a prior conviction. *See supra* Part II.A.

## 2. Qualified immunity applies to the alleged "Double Jeopardy violation"

As to the alleged "Double Jeopardy violation," D.I. 97 at 17, Trotter contends that a "reasonable DOC officer would have known that assigning Trotter to Transitions based on his 1995 criminal charge or plea constituted Double Jeopardy." D.I. 97 at 18.

---

[6] "While [*Clark v. Coupe*] is nonbinding, *see id.* at 1 n.*[], it 'provide[s] guidance and persuasive reasoning.'" *W. R. Berkley Corp. v. Nolan*, No. CV 22-1537-GBW, 2024 WL 4604863, at *13 n.2 (D. Del. Oct. 29, 2024) (quoting *Sprint Commc'ns Co. LP v. Charter Commc'ns, Inc.*, No. CV 18-362-RGA, 2019 WL 7037656, at *4 (D. Del. Dec. 20, 2019)).

The double jeopardy clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "This protection applies both to successive punishments and to successive prosecutions for the same criminal offense." *United States v. Dixon*, 509 U.S. 688, 696 (1993). "'[T]he Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, in common parlance, be described as punishment.' Instead, it 'protects only against the imposition of multiple *criminal* punishments for the same offense.'" *United States v. Jumper*, 74 F.4th 107, 111-12 (3d Cir. 2023) (quoting *Hudson v. United States*, 522 U.S. 93, 98-99 (1997)).

The Court is not convinced that Defendants were on fair notice "that assigning Trotter to Transitions based on his 1995 criminal charge or plea constituted Double Jeopardy." D.I. 97 at 18. Trotter fails to explain how, at the time of the alleged violation, he had a clearly established right, under the Double Jeopardy Clause, not to be assigned to the sex offender treatment program, despite numerous cases stating that such programs are not per se criminal punishments. *See, e.g.*, 2015 WL 4477698, at *3 ("[R]equiring inmate participation in treatment programs, including for sex offenders, is not an enhanced sentence or duplicative punishment."); *Perez v. Fed. Bureau of Prisons*, 229 F. App'x 55, 57 (3d Cir. 2007) (nonprecedential) ("Changes in conditions of incarceration—such as alteration of an inmate's security classification and consequent loss of privileges—are not additional punishments for the original offense in part because the sentence is not being increased beyond that originally imposed."); *Getz v. Carroll*, No. 01-744-SLR, 2001 WL 1617189, at *2 (D. Del. Dec. 7, 2001) ("Participation in a program for sex offenders does not constitute an enhanced sentence or duplicative punishment."). Thus, qualified immunity applies to the alleged Double Jeopardy violation alleged by Plaintiff Trotter.

### III. CONCLUSION

For the foregoing reasons, the Court finds that: (a) Trotter was properly considered a sex offender for purposes of being assigned to the Transitions Sex Offender Program at the time of his 2016-2022 incarceration and (b) qualified immunity applies to Defendants under the circumstances.

Date: December 30, 2024

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE